Thank you, Your Honor, and may it please the court. Michael Lieberman on behalf of the petitioner. This case presents several substantive and procedural questions regarding the reasonable fear screening process. I'd like to start, if I may, with what I think is the simplest and most straightforward way to resolve the case, and that would be to rule on the merits that my client has demonstrated a reasonable fear and is entitled to get past this screening process and on to a full withholding of removal hearing, which, of course, is the only relief we're asking for at this point, just access to the hearing itself. I say that's the simplest and most straightforward way to resolve the case because this court has already decided several cases with very similar facts, and in one case, Fernandez-Avalos, almost identical fact, in which the applicant has been threatened with death or attacked, or both, as in this case, on account of their family relationships because of who they're related to. And in all of those cases, this court has repeatedly reversed the board or reversed immigration judges for misapplying the nexus requirement and not recognizing both that a family is a particular social group for purposes of the immigration statutes and that when someone is persecuted because of that family relationship, that satisfies the nexus requirement. I think this case is actually a lot easier than a lot of the cases this court has already decided because a lot of this court's prior cases have kind of a mixed motive thing going on. For example, in one case, a gang was extorting one person. That person left town and the gang started extorting that person's daughter. And so you have this question, is she being— is this just an extortion case, just a greed motive, which wouldn't be protected, or is it a family motive because they're extorting someone within the same family? I think that's a hard case, but even in that case, this court held that family motive was a central reason for the persecution and that was enough to satisfy the nexus requirement. Here, it's a lot easier— Yeah? Counsel, can I ask you a question? Just assume, hypothetically, that I agree with you that the agency was wrong and can't be reconciled with Hernandez-Avalos on this nexus to a particular social group question. So—and even that I agree that on this record, there was past persecution, and that's clear under our precedent. Wouldn't the more typical thing we would do then be just on sort of the ordinary remand rule, correct that error, send it back, and let the I.J. figure out what follows from that, whether she still thinks it's worth looking at relocation, whether maybe the burden has shifted on relocation? I mean, isn't it typical that we would just send it back and let the I.J. take it from there, once we've corrected this clear error? Sure, I mean, this court has approached that question both ways. I mean, it usually happens— this court has more cases in the asylum context than in the straight-up withholding context, but it has done both things. We filed the 20HA letter on Hernandez-Cartagena, and in that case, this court just reversed straight up instead of sending it back. So I think that's an option. I don't think it's the right option here, because I think, you know, as you just suggested, or at least you want me to assume, the persecution question is clear. And then on the relocation question, I think, you know, that's something that is a legal error. I think it's actually two legal errors for the immigration judge to have ruled that relocation was a ground to deny the claim here. I mean, I'll explain why. I think, as we say in our brief, relocation really is not part of the reasonable fear inquiry. The way we know that is just by looking at the regulation. If you look at the withholding of removal regulation— Counsel, I have a question. I have a question about that.  You're, of course, right that 1208.31 doesn't mention relocation. And 1208.30, I understand, is different. That's expedited removal. But that points us to 208.30, which, again, I understand is expedited removal. But it also discusses the reasonable possibility standard. And in describing what should be considered in assessing whether there's a reasonable possibility of persecution or a reasonable possibility of torture, 208.30 says one of the factors you consider is whether the applicant can relocate. And I'm struggling to understand the import of that and whether we should take that into consideration or how that factors into our analysis here. Can you tell me your position on that? I don't think the parties discussed 208.30, but it lays out what should be considered when someone's considering whether there's a reasonable possibility of persecution or torture. Sure, Your Honor. I don't have that regulation in front of me, but if it's the expedited removal regulation, the standard there is credible fear. It's actually a different standard. Well, no, it's not. It's the standard for asylum is credible fear. And then the standard that the regulation is talking about for persecution, for withholding, or for torture is the same. It's the reasonable possibility of persecution. It's the same language. But of course, I understand that the relocation factor is not repeated in the regulations that you're talking about. But what, if anything, do I do with the factors that are laid out in 208.30? So I think I would say two things about that. First, the fact that it's in 208.30 and it's not in 208.31, I think we have to view that as an intentional omission and not read it into .31, which is where we are now. And so I don't think there's license to kind of assume it also applies there. I think it would actually be the opposite inference that it wouldn't apply there. And the second thing, I think it's important to keep in mind what this reasonable fear screening process is. It's a screening process. The idea is to save the time and resources of the immigration judges and of the board by filtering out frivolous cases. And the last thing you want to do when you're setting up a screening process is make that screening process just as detailed and just as complex as the process you're screening for. Counsel, I understand your argument, but it's not like the IJ or the asylum officer were going rogue here. I mean, the agency manual says you consider relocation. It imports the whole burden-shifting regime from the withholding regulation. The checklist, the agency checklist that the AO was using says you consider relocation. I mean, do you want us to enjoin all of that as contrary to what, the regulation? I mean, you say you're not bringing a facial challenge, but the agency clearly has construed its own regulation so that you do look at relocation, and I'm sort of, and it doesn't seem obvious to me that you wouldn't. This is inherently a forward-looking inquiry. Would the person be persecuted upon return to this country? So what do you want us to do, I guess? If the agency has construed its regulation and is actually telling its AOs that they have to look at relocation, do you want us to enjoin that agency guidance? No, no, and I actually disagree with the premise of the question there. I mean, I think if I'm looking at the administrative record at pages 138 to 140, this is the kind of the form that the asylum officer fills out, the record of determination, and it doesn't mention reasonable fear anywhere. Or excuse me, it doesn't mention relocation anywhere. There are sections for credibility and reasonable fear, but relocation is not something. There's no box to check without being the basis for denying the claim. Wait, on page 67, do I have the wrong form? At the top of page 67, whether it be reasonable for the applicant to relocate within the country to avoid future persecution? No? If I'm looking at the wrong form, I apologize. No, that's okay. I'm on page 138, which is the actual kind of the final determination, the final record of determination that gets sent out to the immigration judge, and that doesn't have any spot for relocation. Okay, well, I'm looking at the reasonable fear determination checklist and written analysis, and at the bottom of 66 through to the top of page 67, it does say, can the applicant relocate? And that's consistent with the agency manual that you've cited, which, you know, and I think this cuts both ways. It also makes very clear that you look at relocation, but you employ the same burden-shifting regime as under the withholding regulation so that the burden in this case would be on the government. So I'm not sure who benefits more from this agency guidance, but it is what it is. Yes, thank you, Judge Harris. You've anticipated my response, which is that, you know, I think that this form isn't consistent with the regulation itself, and so I do think that's a problem, but as you say, even if the relocation inquiry from the withholding stage does apply at the reasonable fear stage, it has to apply the way it is, and the way it is when there is past persecution as there is here, the burden to prove that relocation would be possible and reasonable is on the government, the government's burden, and here, as a matter of law, the government could not have satisfied that burden because the government didn't introduce any evidence in this procedure. At the asylum officer interview, the government isn't present, and then at the hearing before the immigration judge, that government was there, didn't introduce any evidence, didn't say anything, didn't give any kind of basis on which to hold that the government has satisfied its burden. Now, I think the fact that the government's not at the interview and the government usually doesn't introduce evidence at one of these hearings is a good indication that relocation just isn't supposed to be part of this inquiry because it would never really be able to satisfy its burden, but I think at a fair minimum, it would mean that if the inquiry applies, we would win as a matter of law. I mean, I also think we would win on the facts here. I think we have the best possible evidence that relocation wouldn't solve the problem here and at least at a 10% threshold at this stage, which is that when my client was erroneously removed back to Guatemala and went into hiding in Guatemala, he was still tracked down and chased down and almost killed, in his view. And so we already know that simply relocating and going into hiding is not going to solve the problem. And so I think even if this inquiry didn't have the burden shifting that it does, we would still win. But of course, we don't need this court to kind of reach that factual question. You can just rule in the law that the government hasn't satisfied its burden. I do want to also talk about the right to counsel question. Of course, if this court reverses on the merits, it does not need to reach the right to counsel question. And I also know there has been a lot of back and forth in 20HA briefs over the past few days on the right to counsel question. But I do want to emphasize a couple of points. The first is that the Ninth Circuit decision we cited, the Orozco-Lopez case, focuses on the statute. A lot of our back and forth in the 20HA is focused on the statute. I just want to flag again that the regulation here, 8 CFR 1003.16, is even clearer than the statute. It says the alien may be represented in proceedings before an immigration judge. These were undoubtedly proceedings before an immigration judge. And so I just don't see any way there wouldn't be a right to counsel here. Counsel, can I just see if I can focus your argument? We're here on a right to counsel claim, but your client had a lawyer at the IJ hearing, was represented. The counsel filed a brief and attended. So it seems what your case is about is not a right to counsel, but a right to make a closing argument. And I'm having trouble seeing where you get that. Even if we agreed with the Ninth Circuit in its most recent decision, and we said there was a statutory right to counsel, where are you getting the right to make a closing argument? Sure. It's not the right to make a closing argument per se. It's the right to meaningfully assist a client and to actually do what counsel does. Well, but the only thing you asked, the only thing that anyone asked to do at this hearing and didn't get the right to do was make a closing argument. Nobody said anything about there are other things I would like to do to meaningfully assist. The only thing that the IJ said that anyone, I mean, I don't think there even was really an objection. But the only thing anyone asked for that the IJ wouldn't give them was a right to make a closing statement. I think the request was a right to be heard. And I'm not sure if it would have gone just to a closing statement or would have gone to questioning a witness. Well, it was at the very end. Everything was finished. And she said, can I say something now? So I don't know what else it would have been. I think it would have been a few things.  to clarify testimony by eliciting more direct testimony. I mean, obviously, from the transcript there were some communication difficulties. This is being done by videoconference through a translator. And the immigration judge stated herself she had a hard time understanding what exactly the testimony was getting at. So I think that would have helped in a lot of ways. I think being able to provide a closing argument, of course, to explain how the facts apply to the law. I mean, that is the basic stuff that lawyers do. And so if the right to counsel doesn't involve the right for counsel to make a legal argument, then I'm not sure what good it is. If an immigration judge is going to hold a hearing and at that hearing is not going to allow a lawyer to participate, but is going to rely on the results of that hearing in order to make her decision, then the right to counsel just hasn't been honored in that way. It's almost akin to not allowing the lawyer into the room at all. If the lawyer has simply not been able to do anything to assist at that hearing. Counsel, there's like a right to counsel in, you know, under the Sixth Amendment in criminal cases, but we decide an awful lot of cases on the briefs without giving anyone a chance to make any argument at all. And so it's not that, I'm sorry, you know, it's not immediately obvious that allowing counsel, at least to me, that allowing counsel to file a brief but not sort of speak orally sort of drains the right of all meaning. We assume in all kinds of cases that no, no, the brief is what really matters. And there was a brief filed here. Your Honor, I agree that if the immigration judge wanted to decide this case just on the papers and not have any hearing at all, I don't think we would have a right to counsel claim. The problem is the immigration judge decided to hold a hearing and to base her decision on the results of that hearing, but then at that hearing did not allow my client to have his counsel. So I think the better analogy is if, you know, this court doesn't have to grant oral argument, but if it grants oral argument, maybe in this case, for example, but then told me I had to sit down and my client had to present argument on his own behalf, I think that would violate his right to counsel. And it's the same thing here. We're holding a hearing. We're considering what happens at that hearing to make our decision. And yet we're not allowing counsel to assist in that process and assist the client who not only, you know, is coming in via teleconference and not only isn't speaking English and is going through a translator, isn't familiar with our legal system, and it really is kind of in the most vulnerable position when counsel would be able to help, not to mention the stakes here, which are that, you know, if he loses this case, he is being, he would be removed to a country where it's pretty much undisputed that he has received death threats and he very well, you know, has certainly expressed a reasonable fear of death threats and we think has gone far beyond that and has made a very strong case that would ultimately win on a withholding claim that he will be prosecuted, tortured, and possibly killed. And so we think given the stakes involved, given the facts regarding his own personal circumstances, his right to counsel here just was simply violated and counsel needed to have an opportunity to meaningfully participate in the hearing. If there are no other questions, I will reserve the rest of my time for rebuttal. Thank you, Mr. Lieberman. Thank you, Ms. Buckner. Thank you, Chief Judge Gregory. Good morning, your honors. May it please the court. Petitioner had a meaningful opportunity to be heard and his due process rights were fully satisfied. As you know, the procedures were set forth in the regulation 1208.31. This is a screening process and the asylum officer and the immigration judge followed all the procedures. Counsel attended both the interview and the review, evidence was submitted at both and the oral statement was made by counsel after the interview. Counsel, I have a question about the grounds for the decision here. The IJ listed three bases. The government seems to treat the last one as kind of part of the first one, right? The difficulty articulating fear is not really an independent ground. It's just part of the IJ's assessment of the nexus, perhaps. What do we do with relocation? Is relocation an independent ground to find no reasonable fear of torture or persecution or is it part of the overall analysis so that if we find a problem on nexus, we need to send this back because it needs to be reevaluated? I'm not sure how to read it. Okay, I understand your honor. The regulation for withholding specifically states at 1208.16B that relocation, the ability to safely relocate within the country to avoid the harm that is feared and that it would be reasonable to do so. That is an eligibility requirement for both statutory withholding under subsection B and CAT withholding under subsection C. So when the IJ said ability to relocate, that was an independent dispositive ground for denying, I'm sorry, for finding no reasonable possibility of withholding and CAT withholding. It's an eligibility. What about the burden shifting problem that Judge Harris points out that if we think there's a problem with nexus, then he potentially will be able to establish past persecution and that the burden would shift to the government on relocation. So what do we do with that? Yeah, I'm not sure that our briefing was totally clear on this. I'd like to point your honor's attention to 66 of the record, page 66, which is the reasonable fear determination checklist and written analysis. And I fleshed out in my briefing that at the very bottom, 1A, past persecution, it says the applicant established that the harm, and it goes through all of this, and it says no, the box is checked no. So that means that there was no past persecution established. Right, but what if we disagree with that? Well, may I be heard on why you shouldn't disagree with that? Well, yeah, of course, but my question first, you can, of course, address why we might be wrong, but if we think that there is evidence of past persecution, then what do we do with the relocation holding? Okay, the evidence of past persecution is separate and apart from the relocation holding. It's an independent dispositive basis under the regulation. So if you, let's just talk about CAT. So CAT, there's no burden shifting in CAT, withholding CAT, it's always going to apply. But with statutory withholding, there is a burden shifting, but it's my understanding that the perpetrator has to be government-sponsored and not a private actor, and there has to be no past persecution. So in this case, the perpetrator was the games. It was not the government actor. So that burden shifting does not occur. Has anyone in the agency, to your understanding, has anyone in the agency made any finding on the prong you were just talking about, the government or the entity that the government was unable or unwilling to control? The AO didn't address it, and the IJ didn't address it. So I guess I'm not clear on whether we can rely on that here. I understand, Your Honor. Well, the AO didn't write about it in her analysis. The AO made extremely clear what the AO was relying on, and that was not it. The AO, unlike the IJ, we have a pretty clear understanding of the AO's reasoning, and that was not it. The AO said family is not a particular social group. That's correct, but she did check box no for past persecution. But that just means you didn't establish everything, and we know from her written explanation that the thing she found had not been established, had nothing to do with willingness or ability to control. It was about the nexus inquiry. She didn't find a PSG. So I just, I mean, could you just maybe assume hypothetically, and I understand you disagree, but assuming hypothetically that on this record we can't say there was no past persecution. That would mean that now the burden shifts to the government on relocation, right? Correct, however- Okay, and is it your position that on this record we could find under substantial evidence review that the government has met its burden of showing that this person could relocate reasonably? Well, if we can go to subsection B, I believe this only applies when there's a private, there's a public actor and not a private actor. But if you just assume with me heroically, assume I've made a whole bunch of mistakes, but here I am. I think the burden has shifted on relocation. All I want to know from you, I guess, is is it the government's position that if the burden has shifted on relocation, we could affirm this finding because there's substantial evidence showing that the government has met its burden of showing that this person can reasonably relocate in Guatemala? Or is the government not taking that position? That's all, that's- The government did meet its burden, I believe, because basically based on the testimony provided, I mean, the testimony was completely vague and unresponsive. And in fact, when he was asked, when he was asked how he, whether he would be sought after when he returned, he changed the subject for the IJ. And when he was asked, how will they know that you are Mr. Tomas Ramos? And he said, because I go to church, because I'm a Christian. I mean, there's no evidence whatsoever in the record that he would have difficulty relocating to another section of Guatemala. Well, I read the IJ. I mean, the IJ doesn't give us much in the way of reasoning and writing. But if you read the hearing, it seems clear the theory is, he says, I can't relocate. It won't be safe. The gang will be looking for me. And I'm easy to find because I go to church. So you can just kind of hang out around the church and there's where I'll be. And she says, you're not that big a deal. You're not that notorious. Nobody cares, bygones. Your son's already out of the country. They're not going to bother looking for you. I mean, that's the whole theory on relocation, the bygones theory of this case. The gang is not coming after you. It's not that big a deal to them. And I just don't understand, even if the burden weren't on the government, I would have real questions about whether there is substantial evidence in this record supporting a finding that he can safely relocate. Because the IJ's theory is totally contradicted by his testimony about what happened when he was deported by mistake to Guatemala in 2019. And indeed, the gang was not treating this as bygones. They were still after him, even though his son was out of the country. So I'm really struggling on relocation with what could possibly support this finding. I think I can help there. In those three months when he was wrongly deported at the end of 2019, he lived at a church member's house. That's in his own community. He didn't relocate to another section. I'm saying something different because the IJ, it's not as though the IJ said you could live over here. The IJ said the reason you can relocate is because they're not looking for you at all. You could go anywhere you want. They don't care anymore. Your son is out of the country. They're done with you. And that turns out not to be true. So everything we have of the IJ's reasoning is contradicted by the record. And there's nothing else in here on relocation. It's not as though the IJ said you could live with your uncle who lives in this city in Guatemala. All the IJ said for why you can relocate is they're not still looking for you. And what the petitioner did, however, was he merged his claims. He said, I can't relocate because they'll know I'll be a Christian. Well, wherever he- Well, why isn't that perfectly sensible? Why isn't that so sensible? He's saying wherever I live, I go to church, I wear a unique shirt when I go to church, I carry a special Bible. How hard am I to find? Your Honor, I was just explaining how he's merged the claims. That doesn't show that he's Welder's father and that he refused gang recruitment. So he can relocate to another part of Guatemala and they will not know that he is Welder's father who refused recruitment. When he hid in hiding, he was at the church member's house and that was not in another part of Guatemala. When you look at the relocation requirements and case law, if he's saying I can't relocate to another part of Guatemala because I'm a Christian, the IJ said, the majority of people are Christians. How are they going to target you? How are they going to target you, Mr. Tomas Ramos, because you're a Christian when everybody, when the great majority are Christians? It doesn't add up. So he's merged his two claims there. And I think it's important to differentiate them. I'm going to read the report to you. The report's indulgent, please. As far as past persecution, if I may be heard on that, if Tomas Ramos testified exactly like his declaration was written, absolutely he made the nexus requirement under the Fourth Circuit precedent, but he didn't. The declaration submitted before his testimony at the IJ was very detailed. It's the first time he mentioned harm. And it was, and he suddenly had a black eye and his daughter had a rock thrown at her and the wife was beaten. But he never mentioned harm before there. So, I mean, we think, I think we should take that checkbox pretty seriously. There was no past persecution in this case. When he was asked by the IJ, and where did they hit you? All he said, all he said in the IJ proceeding was that these people came to his house before he got there. They knocked down the door. He told the AO he saw blood everywhere. But somehow something happens with the gang fighting. And then he said, and they hit me. And the IJ said, and where did they hit you? And he changed the subject. I mean, he had a chance to show harm in his testimony. And he never did. He never did. He absolutely did in the declaration, but he didn't testify. Was this a ground for the, sorry, counsel, was this a ground for the IJ's ruling? I thought the IJ said there was no nexus to any protected ground, not that there was no harm. That's correct. That's correct, Your Honor. There was no nexus. And, but I was, I think I was responding to the burden shifting. But you raised a good point. It's not in the final agency determination, the past persecution finding. So for that reason, for that reason alone, I think the burden shifting does not have to be, does not have to be the case here. Counsel, would you repeat what you said? You said for that reason alone, the burden shifting, what? Well, because the final agency determination is the IJ review. It's not the AO review. And as Judge Rushing pointed out, the IJ didn't rely on it. The IJ didn't say no past persecution. The IJ said internal relocation, no nexus, and difficulty articulating fear. So because past persecution was in the ground in the final agency determination, we don't have to get into it. And whether there was burden shifting and because it wasn't. The IJ, I mean, the nexus goes to whether there was persecution, right? My point was just the IJ didn't say, I find there's no reasonable possibility of persecution because you weren't ever harmed to begin with. The IJ didn't base it on what you were saying, that there's no harm. The IJ said there's no nexus to a protected ground. So I read that to mean, you know, assuming there was harm, there's not a nexus to a protected ground. That's possible. That's a very plausible reading of that. Another reading is that, and I'm sorry that, you know, these are limited proceedings and review proceedings, and we're not going on a lot here. But another reading is at the end of the IJ hearing, the IJ talks about the elements of criminality that are involved with the gangs. So another, you know, another possible thing is that she found this was a matter of criminality, perhaps with respect to the, with the church member who was killed. There was a church member killed, but there's no indication of the motive for that murder. So that nexus could also be a criminality nexus, which is not, of course, not a basis for finding persecution on the Council of Protected Grounds. I'm sorry to move in a different direction, but when you said that the final agency action is just the IJ order, that's all we're reviewing. What do we do then about torture, given that the IJ said absolutely nothing about torture? I had sort of wondered whether we could just assume, given that the IJ didn't say anything but affirm, that the IJ adopted the asylum officers finding that there was no evidence of acquiescence. But you seem to be suggesting, no, we can't do that. We're limited to what the IJ said, and the IJ said nothing. So what do we do? Well, the IJ talked about relocation, and the reg makes clear that that's always an eligibility factor for CAT withholding. So Petitioner argues that why are we looking at relocation? It's not in the reasonable fear reg. No, but it's in the withholding in CAT statute. And to say let's not look at relocation is like saying let's not look at nexus for asylum. You can't do that. You have to look at the underlying eligibility requirements when determining reasonable possibility, even though it's not a full-blown adjudication. Counsel, I totally, I understand what you're saying about that, and I'm inclined to agree that you would be looking, it would just be sort of sensible to look at relocation when you're making this inquiry. But I did have one question. If there's been past persecution, I'm just, if there's been past persecution, then the agency presumes you have a reasonable fear of future persecution. Isn't that enough to get you to reasonable possibility? What does it mean to say that it is presumed, it's so likely that we're going to presume that you have a reasonable fear of persecution, but it's still not reasonably likely that you'll be, it just seems to me that what, I understand why you would look at relocation generally, but I'm a little, I'm just wondering what you think about whether it's obvious you would still look at it if there's been past persecution, which gives rise to a presumption that your fear of reasonable persecution is a reasonable one. And if all we're asking is, is there a reasonable possibility, what is the space between those two things? I understand your question, Your Honor. The internal relocation assumes you can safely and reasonably relocate to another part of Guatemala. So whether or not you had a reasonable fear of persecution in your hometown is not related to your ability to relocate where there are different gangs or no gangs and they don't know your history. So the... But if it's totally unrelated, why is there a presumption? Then it doesn't make any sense. The mere fact that you've shown past persecution in your hometown would have no bearing whatsoever on whether it's likely you'll be able to relocate. But that's not what the agency thinks. The agency thinks if you were persecuted in the past in your own town, they will presume. It's so likely that we'll just presume it, that of course you'll be persecuted anywhere in this country, and now the government has to prove why that's not so. So they're obviously related. I think they're in the same section of the regulation, but the second one, the relocation, defeats the first one. Yes, okay, if you have established past persecution, you have a reasonable fear of future persecution, but certain things make that irrelevant, including the government defeats that by saying you can relocate in another part of the country and those gangs won't know you and they won't know your history. So they are in the same regulation and same paragraph, but they're not logically related except to the effect that the relocation defeats the past persecution finding. That's why they're in the same section. Can I ask you a question going right to counsel? Because I want to give you a chance to respond to what your colleague was saying toward the end of his argument. And I understood the argument to go something like this, and I'm adding only a little bit. Look, if the IJ is acting in an appellate capacity, you might not have a right to a lawyer. Like then, sure, you can just read it on the briefs. But if the IJ is acting in a sort of first instance, first order fact-finding capacity, having a hearing, taking evidence, taking testimony, making factual findings totally separate from anything the asylum officer found, as happened here with respect to relocation, well then, of course, you would need a lawyer for that. And it seems to me that the regulations, the reasonable fear regulations themselves sort of could be read that way, that they lay out in subsection C that when the asylum officer is developing the factual record, taking testimony, making factual determinations, you have a right to a lawyer, and that lawyer does have a right to make a closing statement. And so why if the IJ, and I understand the IJ has tons of discretion about how to do this subsection G review, but if the IJ in her discretion decides, I'm just going to be a second AO. I'm going to do exactly what the AO did. I'm going to have a hearing, I'm going to take testimony, and I'm going to make new factual findings. Why wouldn't you have the same procedural protections that you get in subsection C of the regulation? Because, as you can see from the forms that the AO and the IJ use, I mean, their purpose is intended to be very different. The IJ proceeding is a review. It's just a screening process, and they're only providing But the IJ didn't just review here. I understand that, and totally, I have always, this seems 100 percent right to me, that if the IJ just wants to act as an appellate judge, just pick up the record, read the record, figure out if the AO got it right, then right. You wouldn't have a right to a lawyer. But that's not what happened here. The IJ didn't do that. The IJ largely did the review. I think the nuance here is that, of course, even though these are limited proceedings, the petitioner has the right to testify again. So to deny the IJ even sitting in a review capacity the right to assess that new testimony wouldn't be sound. So I think you can reconcile that it was a review proceeding, a screening process, a review, and that the IJ did review and concur with the asylum officer, and that when you see how much process that petitioner received throughout, I think the court should find that these due process rights were satisfied. I wanted to get a... Counsel, sorry, I know you're trying to wind down, but I wanted to make sure to get the government's position on this regulation at 8 CFR 1003.16. Your colleague on the other side pointed out in their brief that they think this regulation granted a right to counsel. I know in your brief you talk about the statute, but I didn't see you talk about this regulation. What's the government's position on whether the right to counsel in that regulation applies here? Thank you, Your Honor. The government focuses on the word may, the discretionary word may, that an alien may be represented at proceedings before an immigration judge. Because this is a discretionary term, of course we believe it does not establish a right to counsel in any proceedings before an IJ. It's a possibility. They may have a right, but they may not. Also, in response to petitioner's argument that our position renders Section 1362 superfluous, I would just like to add that the right under Section 1362, the statute about the right to counsel, applies more than just removal proceedings, full-blown removal proceedings under 1229A. It also has independent effect in withholding only proceedings and asylum-only proceedings regarding the visa waiver program because they are adversarial. They are adversarial proceedings, and that's where a right to counsel is necessary, even in those two subsets. By contrast, as clearly laid out in the regulation, the screening process is not to be an adversarial process. Therefore, it's not a removal proceeding covered under 1229A. Regardless, the opposite finding would conflict with the Supreme Court cases in Nasrallah and Pince-Montchavez, which I believe we've adequately set forth in our 28J letters. I'm sorry. Do I have additional time? Yes. No, you don't. I don't. I'm sorry. But I will let you go ahead. Something further on that question or just generally closed? I was just generally going to close. Okay. You may. Go ahead. The court should find that Congress, in enacting the reinstatement statute, left a gap for the agency to determine the reasonable fear of procedures. The statute is silent. The procedures are thorough, and the due process of petitioner was established in this case. In fact, he received more due process than he was entitled to under the regulation. Thank you, Your Honor. Thank you so much, Counsel. Mr. Nieman, you have some time to make. Thank you, Your Honor. I think I'll start, if I may, with the relocation inquiry. And I want to try to convince the court that, you know, even though it wouldn't be crazy for the agency to have directed that the relocation question be part of the reasonable fear process, it also makes a lot of sense why they didn't do that and why that doesn't appear in the reasonable fear regulation. For a couple of reasons. I mean, number one, this is a screening process. The relocation inquiry, you know, we haven't really talked about the contours of it. It's a complicated inquiry. It's very individualized. It depends on the precise type of persecution being suffered, the reach of the gang or the persecutor and how big they are, how big the country is. I mean, here we're dealing with Guatemala, which is the size of Virginia. It's not that big of a country. Sorry, to clarify, I wanted to ask, in your briefs, it seemed to me, you were only challenging relocation as whether it's a valid factor to be considered. If we conclude that it is, have you not challenged that there was substantial evidence to support the finding that your client could relocate? I believe we have, Your Honor. We pointed out that when my client was removed back to Guatemala, he was in fact tracked down while in hiding by the gangs. And we also have a lot of evidence in the administrative record regarding the pervasiveness of gangs throughout Guatemala. This court's actually decided a case already. Perez Morales V. Barr, which is 781 Federal Appendix 192, holding that someone who was persecuted by gangs in Guatemala could not relocate to avoid that gang violence because of the pervasiveness of gangs. So I think there's plenty of evidence in the record in this court's case as well to decide that relocation question in our favor. So you're challenging whether there was substantial evidence. Am I understanding you right that you want to be heard on that as well? I mean, that's our third-level argument. Our first-level argument is that relocation is not a factor. Our second-level argument is that if it is a factor, the same burden-shifting approach applies. And I don't think I heard my friend on the other side offer any argument on that point of how the government could actually meet their burden. There's no burden-shifting in CAT, right, when we're talking about the possibility of torture instead of the possibility of persecution, right? So for the CAT claim, there's no burden-shifting on the question of relocation, but the question of relocation is just part of the totality of the circumstances test in that context. In the CAT context, it's not like if you can relocate, you lose. It's considered as part of your overall holistic analysis. So I don't even think it would doom our case there. But on the main persecution claim, our main argument is the relocation doesn't apply, and if it does apply, the burden-shifting approach applies. And I haven't heard the government suggest they could actually win on that burden-shifting approach because they haven't actually introduced any evidence of any kind. Just to make sure where you're going, in the context of the screening with the asylum office for reasonable or unreasonable basis via persecution, are you saying that relocation is really of no issue at that point? Yes, that's right. Our position is that what the agency did is say, look, there's kind of two aspects to this once you get to the actual final withholding of removal stage. The first aspect is can the applicant make an affirmative case? Can you show that you would be persecuted on a protected ground if you were removed and went back home? Then the second piece is sort of the rebuttal case. Can the government say, well, maybe that's true, but you could relocate, or maybe that's true, but circumstances have changed since you were there last, and you're not going to face it anymore. And it was perfectly sensible for the agency to do what they did, which was say, as it's reasonable for your screening stage, if you want to be quick and simple and not complicated, we're just going to focus on the affirmative case and the affirmative case alone, and we're going to deal with a rebuttal kind of case the government can put on. We're going to deal with that later once we get through the screening process and get you to a full withholding of removal proceeding. It is your position further that if the government does not, at the AO level, put on anything as to relocation, it doesn't get a mulligan if it goes to the IJ and it's reviewed solely on that determination. They'll say, no, as we indicate, we haven't found anything, but indicate that's next. Then you don't get a mulligan to say now, okay, well, now I know that that one is lost. Let me now go to relocation. It's your position they can't do that now? That's correct, Your Honor. I think the government believed it could prove relocation and that was a relevant factor. It had a chance to do something about it and it didn't do anything about it. And so on this record, as a matter of law, we would win on the relocation question, even if it applied. Right. Okay. For that reason and the reasons in our brief, we ask the court to revert or vacate. Thank you so much, Mr. Lieberman, Ms. Bruckner. Thank you so much for your argument. Thank you. We didn't know. But please know that nonetheless, we really much appreciate it. We wish you well. And thank you again. Thank you. All right. Thank you.
judges: Roger L. Gregory, Pamela A. Harris, Allison J. Rushing